STATE OF NORTH CAROLINA v. BOYD STRICKLAND

No. 24

(Filed 30 January 1970)

**1. Constitutional Law § 33— self-incrimination**

The privilege against self-incrimination relates only to testimonial or communicative acts of the person seeking to exercise the privilege and does not apply to acts not communicative in nature.

**2. Criminal Law § 43— admissibility of motion pictures**

Generally, the basic principles which govern the admissibility of photographs apply to motion pictures, and where they are relevant and have been properly authenticated, they are admissible in evidence.

**3. Constitutional Law § 33; Criminal Law § 43— self-incrimination — sound motion pictures of defendant**

Talking motion pictures of an accused in a criminal prosecution are not *per se* testimonial in nature, and where they are properly used to illustrate competent and relevant testimony of a witness, their use does not violate an accused's privilege against self-incrimination.

**4. Criminal Law § 43— admissibility of illustrative motion pictures — slight variation**

The State cannot introduce substantive evidence or add to the testimony of a witness under the guise of using a moving picture to illustrate the testimony of the witness, but if the testimony of the witness is generally consistent with the illustrative moving picture, a slight variation only affects the credibility of the evidence.

**5. Criminal Law §§ 43, 76— motion pictures containing in-custody statement — necessity for voir dire**

In this prosecution for operating a motor vehicle upon the public highways while under the influence of intoxicating liquor, defendant's automobile having wrecked and the driver having left the scene, the trial court erred in the admission, over defendant's objection, of sound motion pictures containing an in-custody statement by defendant which placed defendant at the scene of the wreck and destroyed his contention that his intoxication resulted from drinking subsequent to the wreck, where the trial court did not conduct a *voir dire* hearing in the absence of the jury to determine whether defendant's statement contained in the sound pictures was voluntarily and understandingly made after he had been fully advised of his constitutional rights.

**6. Criminal Law § 76— in-custody statements — admissibility — necessity for voir dire hearing**

In-custody statements attributed to a defendant, when offered by the State and objected to by the defendant, are inadmissible for any purpose' unless, after a *voir dire* hearing in the absence of the jury, the court, based upon sufficient evidence, makes factual findings that such statements were voluntarily and understandingly made by the defendant after he had been fully advised of his constitutional rights.

**7. Criminal Law § 43— admissibility of illustrative motion pictures — duties of trial judge**

The trial judge is required to examine carefully into the authenticity, relevancy and competency of a motion picture offered to illustrate a witness' testimony, and if he finds it to be competent, to give the jury proper limiting instructions at the time it is introduced.

**8. Criminal Law § 43— admission of motion picture — preview by defense counsel**

When a moving picture is offered into evidence, upon defendant's request the trial judge should allow defendant's counsel to preview it so that he can intelligently enter objections to those portions which he may deem uncorroborative or otherwise objectionable.

**9. Criminal Law §§ 43, 76— sound motion picture containing incriminating statement by defendant — necessity for voir dire**

When a sound motion picture offered into evidence contains incriminating statements made by defendant from his knowledge of the offense, upon defendant's objection the trial judge must conduct a *voir dire* to determine the admissibility of the in-custody statements or admissions contained in the sound picture.

10. **Criminal Law § 43— photographs and motion pictures of misde-meanants — G.S. 114-19**

     G.S. 114-19 does not prohibit the admission of photographs or motion pictures of a defendant charged with a misdemeanor, the statute being concerned with the compilation and preservation of statistics and records rather than the creation of a new rule of evidence.

MOORE, J., did not participate in the consideration or decision of this case.

APPEAL by defendant pursuant to G.S. 7A-30(1) from decision of the Court of Appeals (5 N.C. App. 338), which found no error in his trial before *Seay, J.,* at 3 March 1969 Criminal Session of FORSYTH Superior Court.

Defendant was charged with the offense of operating a motor vehicle upon the public highways while under the influence of intoxicating liquor. He entered a plea of not guilty.

The State offered evidence which tended to show:

On the night of 1 December, 1967, at approximately 7:00 o'clock, Deputy Sheriff John Taylor, who was off-duty, saw an automobile run off the road, cross an embankment, and strike a tree. He asked the driver to step out of the car. He smelled the odor of alcohol on the driver, who told the Deputy that he had drunk two beers. Deputy Taylor directed the driver to sit down on the embankment and noticed that he staggered when he walked. The Deputy had someone call the Highway Patrol and began to direct traffic because of a "live" power line lying in the road. He later noted that the driver had left the scene.

When Patrolman W. A. Ballard arrived, it was determined that the automobile was registered in defendant's name. Patrolman Ballard then proceeded to defendant's home, and upon his arrival at about 8:15 he found defendant in a "very intoxicated condition." Defendant voluntarily went to the scene of the accident with the officer, and went from there to the Clerk's office. On the way to the Clerk's office Patrolman Ballard advised defendant that if an eye-witness identified him as the driver of the wrecked car, he would be charged with driving under the influence. The officer also testified: "I at that time, advised him of his rights." Defendant was identified by Deputy Sheriff Taylor as being the driver of the wrecked automobile and defendant was thereupon placed under arrest.

Patrolman Ballard further testified:

"I read the warrant to him and offered him a test. At that time his speech was rambling, mumbled. I have his speech marked on my report here. I have 'mumbled' and 'slurred'" marked.

"As to Mr. Strickland's balance, he needed support. When he was walking, he was stumbling. Several times I had to take hold of him to support him. I only gave Mr. Strickland the balance, the walking test. I asked him. I gave him the finger-to-nose test. He completely missed with both hands. Coins: he fumbled with them. . . .

"A movie was made of the defendant at the station there. I saw the movie some time in December of '67, before this case came up in Traffic Court. I haven't seen it since. To the best of my remembrance of the movie, it fairly represents the defendant at that time it was taken."

The Solicitor offered the sound moving picture of defendant, made at the station approximately two hours after the wreck, "to illustrate the testimony of Officer Ballard."

Defendant entered an "objection to the movie." After a brief recess, the court overruled the objection and instructed the jury as follows: ". . . you are to consider these motion pictures that are going to be shown, solely for the purpose of illustrating and explaining the testimony of this witness, and you are not to receive the pictures or view these motion pictures as substantive evidence."

Defendant offered evidence which tended to show that he was not the driver of the automobile when it was wrecked; that Patrolman Ballard arrested him at his home at about 10:00 o'clock P.M., and that he had been drinking beer at that time. He also offered evidence of his good reputation.

The jury returned a verdict of guilty as charged in the warrant. Defendant appealed.

*Attorney General Morgan and Staff Attorney Giles for the State.*

*White, Crumpler and Pfefferkorn for defendant.*

BRANCH, J.

The question presented for decision by this appeal is whether the North Carolina Court of Appeals erred in holding that sound motion pictures, taken of defendant approximately two hours after he was alleged to have operated an automobile upon the public highways of North Carolina while under the influence of intoxicating liquor, were properly admitted into evidence.

Defendant contends that the use of the sound moving pictures violated his Fifth Amendment privilege guaranteeing that a person

cannot be "compelled in a criminal case to be a witness against himself" and the guarantee of Article I, Section 11 of the North Carolina Constitution that a person shall "not be compelled to give self-incriminating evidence."

[1] The Federal courts have recognized that the Fifth Amendment privilege against self-incrimination relates only to testimonial or communicative acts of the person seeking to ̰xercise the privilege and does not apply to acts not communicative in nature. *Schmerber v. California,* 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908; *Holt v. United States,* 218 U.S. 245, 31 S. Ct. 2, 54 L. Ed. 1021.

In the case of *Schmerber v. California, supra,* a physician withdrew blood from the defendant at the direction of a State officer, over objection of the accused, and in a State prosecution for driving an automobile while under the influence of intoxicating liquor offered in evidence an analysis of the blood so taken for the purpose of showing intoxication of accused. The defendant objected to the introduction of this evidence, contending that this violated his Fifth Amendment privilege against self-incrimination. Holding the blood test evidence competent because it was not his testimony or his communicative act, the United States Supreme Court stated:

"(B)oth federal and state courts have usually held that it (Fifth Amendment) offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it."

Another leading case in the federal court structure is *Holt v. United States, supra,* in which there was evidence that prior to the trial the accused, over his objection, was compelled to put on a blouse that "fitted" him. Mr. Justice Holmes, speaking for the Court, rejected the argument that this was a violation of Holt's right against self-incrimination as "based upon an extravagent extension of the Fifth Amendment," and went on to say:

"(T)he prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be ma-

terial. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof." 218 U.S. at 252-253, 54 L. Ed. at 1030.

[2]    Generally, the basic principles which govern the admissibility of photographs apply to motion pictures, and where they are relevant and have been properly authenticated, they are admissible in evidence. They have been used in both criminal and civil trials for many purposes, e. g., civil cases: *Lehmuth v. Long Beach Unified School Dist.*, 53 Cal. 2d 544, 348 P. 2d 887, 2 Cal. Rptr. 279 (1960) (motion picture depicting condition of personal injury victim); *McGoorty v. Benhart*, 305 Ill. App. 458, 27 N.E. 2d 289 (1940) (motion pictures admissible to discredit the testimony of a personal injury claimant by showing activity inconsistent with alleged injury); *Sparks v. Employers Mut. Liab. Ins. Co. of Wis.*, 83 So. 2d 453 (La. Ct. App. 1955) (motion picture admissible to show condition of a person, place, object, or activity). E. G., Criminal cases: *People v. Hayes*, 21 Cal. App. 2d 320, 71 P. 2d 321 (1937) (sound motion picture of confession held admissible); *People v. Dabb*, 32 Cal. 2d 491, 197 P. 2d 1 (1948) (sound pictures of re-enactment by defendants of a crime). 41 Notre Dame Lawyer, 1009, 1010, n. 6 (1965-66); Scott, Photographic Evidence, § 624; 62 A.L.R. 2d 686. However, there is very little authority on the precise question of using moving pictures in cases in which a person is charged with driving on the public highways while under the influence of intoxicating liquor and asserts his constitutional right against self-incrimination. According to our research only one jurisdiction, Oklahoma, has adopted the view supporting defendant's position.

In *Spencer v. State*, Okla. Cr., 404 P. 2d 46, defendant appealed from a conviction of operating a motor vehicle while under the influence of intoxicating liquor, contending that films of coordination tests performed by him at police direction and without his knowledge violated his constitutional right against self-incrimination. Holding that defendant's constitutional rights were violated, the Court said:

"Before it can be said that defendant waived his constitutional rights against self-incrimination, it must be shown that the defendant — of his own volition, freely and voluntarily — posed for the pictures after being advised that the tests were optional; and that films were being taken of his actions; and advised as to his rights against self-incrimination.

"In absence of such a showing, the pictures admitted in evi-

dence at the trial over objections of defendant, would constitute reversible error."

Accord: *Ritchie v. State*, Okla. Cr., 419 P. 2d 176; *Stewart v. State*, Okla. Cr., 435 P. 2d 191.

It is noted that there was evidence in the instant record, both in the testimony of patrolman Ballard· and in the moving picture itself, that defendant had been warned of his constitutional rights and that he understood them.

A view contrary to that adopted by the court in the State of Oklahoma has been expressed in the states of Colorado, Texas and Ohio. In *Piqua v. Hinger*, 15 Ohio State 2d 110, 238 N.E. 2d 766, defendant was arrested and subsequently charged with operating a motor vehicle while under the influence of intoxicating liquor. He was taken to the police station, where he was ordered to perform certain physical tests. Unknown to him, motion pictures were made of the tests. After the tests he was advised of his constitutional rights. The films were offered into evidence at his trial. Defendant was convicted and appealed, contending that the films should have been suppressed by authority ·of· *Miranda v. Arizona, supra.* The Court rejected this contention and, holding that *Schmerber v. California, supra,* was dispositive of the issue, stated:

> "The evidence introduced in the trial of the instant case, in respect to the physical tests made and filmed, did not constitute . matter communicated by the accused from his knowledge of the offense. On the contrary, it was real or physical evidence of the kind designated in *Schmerber* as unprotected by the Constitution. Such evidence is constitutionally admissible, even if compelled, and irrespective of whether the warnings. required by *Miranda* are given."

The case of *Housewright v. State (Texas)*, 154 Cr. 101, 225 S.W. 2d 417, is an appeal from conviction' of operating a motor vehicle while under the influence of' intoxicating liquor.' The defendant, contending that admission of moving pictures of a scene at the jail while defendant was being booked .and taken without his consent, was violative of his constitutional ·protection against self-incrimination. The court held that the moving pictures when properly identified were admissible, and declared:

> "Evidently the witnesses could delineate the ˌpeculiarities of appellant at the scene of the alleged offense and his demeanor and actions in ˈorder to give a basis of their opinion as to his intoxicated condition and it seems to us·to be but a clearer de-

lineation of what they saw and described to the jury if such a scene could thus be shown by a series of pictures taken immediately after his apprehension instead of the eyewitnesses testifying only from memory."

In *Lanford v. People,* 159 Colo. 36, 409 P. 2d 829, defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor. Sound moving pictures were taken shortly after his arrest which showed, among other things, his refusal to take sobriety and coordination tests. Over his objection, the sound moving pictures were introduced into evidence at his trial. The court held the sound movies to be admissible, but that at defendant's request the court must caution the jury as to the limiting purpose of the evidence and, upon request, instruct the jury as to its limiting purpose.

**[1]** North Carolina has long recognized the distinction between compulsory testimonial evidence and compulsory physical disclosure. The North Carolina view is summarized in *State v. Paschal,* 253 N.C. 795, 117 S.E. 2d 749, by Bobbitt, J. (now C.J.) as follows:

"The established rule in this jurisdiction is that '(t)he scope of the privilege against self-incrimination, in history and in principle, includes only the process of testifying by word of mouth or in writing, *i.e.,* the process of disclosure by utterance. It has no application to such physical evidential circumstances as may exist on the accused's body or about his person.' *S. v. Rogers,* 233 N.C. 390, 399, 64 S.E. 2d 572, where Ervin, J., reviews prior decisions of this Court. See also *S. v. Grayson,* 239 N.C. 453, 458, 80 S.E. 2d 387, opinion by Parker, J., and cases cited.

"Where this rule applies, it is held that the admission of evidence of a defendant's *refusal to submit* to a chemical test designed to measure the alcoholic content of his blood does not violate his constitutional right against self-incrimination."

See also *Branch v. State,* 269 N.C. 642, 153 S.E. 2d 343; *State v. Gaskill,* 256 N.C. 652, 124 S.E. 2d 873.

Both better reasoning and the prevailing weight of authority lead us to follow the views adopted by Colorado, Texas and Ohio.

**[3, 4]** Brock, J., speaking for the Court of Appeals, correctly and concisely stated:

"Talking motion pictures of an accused in a criminal action are not per se testimonial in nature, and, where they are prop-

erly used to illustrate competent and relevant testimony of a witness, their use does not violate accused's privilege against self-incrimination."

However, the State cannot introduce substantive evidence or add to the testimony of a witness under the guise of using a moving picture to illustrate the testimony of the witness. Nevertheless, if the testimony of a witness is generally consistent with the illustrative evidence, a slight variation only affects the credibility of the evidence. *State v. Brooks*, 260 N.C. 186, 132 S.E. 2d 354.

[5]   The burden here was upon the State to prove that defendant operated his motor vehicle upon the public highways or streets while he was under the influence of intoxicating liquor. Defendant admitted that he had been drinking, but denied that he was operating his automobile when it was wrecked. He also defended upon the ground that even if the jury should find that he was the operator of the motor vehicle, his intoxication resulted from consuming alcoholic beverages in the two-hour period which elapsed between the wreck and the time when the sound moving pictures were made.

In the instant case the moving picture not only depicted defendant's physical condition and his ability (or inability) to coordinate his movements; its sound track recorded the following incriminating statement — "communicated by the accused from his knowledge of the offense": "Q. Have you had anything to drink since they stopped you? A. No, sir."

This question and answer presented testimony from defendant which tended to show not only that he was driving the motor vehicle but that he was under the influence of intoxicating liquor at that time. It placed him at the scene of the wreck and completely destroyed his contention that his intoxication resulted from drinking subsequent to the wreck. The statement was clearly substantive evidence, competent as an admission if competent at all. It certainly did not illustrate the testimony of any other witness.

[6]   It is the law in this state "that in-custody statements attributed to a defendant, when offered by the State and objected to by the defendant, are inadmissible *for any purpose* unless, after a *voir dire* hearing in the absence of the jury, the court, based upon sufficient evidence, makes factual findings that such statements were voluntarily and understandingly made by the defendant after he had been fully advised as to his constitutional rights." *State v. Catrett*, 276 N.C. 86, 171 S.E. 2d 398, filed 6 January 1970. *Accord: State v. Moore*, 275 N.C. 141, 166 S.E. 2d 53; *State v. Gray*, 268

N.C. 69, 150 S.E. 2d 1; *State v. Conyers,* 267 N.C. 618, 148 S.E. 2d 569; and *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572. This statement from *Catrett* was made with reference to the defendant's incustody statements which were offered for *impeachment* purposes. *A fortiori,* it is applicable to the statement which defendant made in consequence of the interrogation quoted above.

The Oklahoma case of *Stewart v. State, supra,* cited as being contrary to the view adopted by this Court, is in partial accord with this decision, in that it holds that sound motion pictures taken of a defendant are inadmissible in evidence without a showing that prior to the taking he was advised of his right to counsel and given the admonitions required by *Miranda v. State of Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, and *Escobedo v. State of Illinois,* 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977.

[5] In the instant case, since no *voir dire* was held, there must be a new trial.

[7-9] Aside from the constitutional and procedural questions here presented, we think it appropriate to observe that the use of properly authenticated moving pictures to illustrate a witness' testimony may be of invaluable aid in the jury's search for a verdict that speaks the truth. However, the powerful impact of this type of evidence requires the trial judge to examine carefully into its authenticity, relevancy, and competency, and — if he finds it to be competent — to give the jury proper limiting instructions at the time it is introduced. When a moving picture is offered into evidence, upon defendant's request the trial judge should allow defendant's counsel to preview it so that he can intelligently enter objections to those portions which he may deem uncorroborative or otherwise objectionable. Furthermore, when the sound motion picture contains incriminating statements by the defendant — made "from his knowledge of the offense" — upon defendant's objection, the judge must conduct a *voir dire* to determine the admissibility of the in-custody statements or admissions contained in the sound picture.

[10] We find no fallacy in the reasoning of the North Carolina Court of Appeals to the effect that G.S. 114-19 did not create a new rule of evidence. Even a cursory reading of this statute in connection with the chapter and article in which it is found leads to the conclusion that the statute is concerned with the compilation and preservation of statistics and records rather than the creation of a new rule of evidence.

For reasons stated, the decision of the. Court of Appeals is re-

versed and the cause is remanded to that Court with direction to award a new trial, to be conducted in accordance with the principles herein set forth.

Reversed and remanded.

MOORE, J., did not participate in the consideration or decision of this case.