IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-490

 No. COA20-488

 Filed 21 September 2021

 Wake County, No. 17 CVS 003251

 HORTENSE PAMELA HILL, Plaintiff,

 v.

 DAVID WARNER BOONE, M.D., and RALEIGH ORTHOPAEDIC CLINIC, P.A.,
 Defendants.

 Appeal by Plaintiff from judgment entered 17 September 2019 by Judge

 Stephan R. Futrell in Wake County Superior Court. Heard in the Court of Appeals

 11 May 2021.

 Knott and Boyle, PLLC, by W. Ellis Boyle and Benjamin Van Steinburgh, for
 plaintiff-appellant.

 Yates McLamb & Weyher, LLP, by John W. Minier and Alexandra L. Couch,
 for defendants-appellees.

 MURPHY, Judge.

¶1 Evidence regarding damages may not typically be admitted during the liability

 portion of a bifurcated trial pursuant to N.C.G.S. § 1A-1, Rule 42(b)(3). However, as

 here, when Plaintiff opened the door to evidence relevant for impeachment purposes

 by testifying regarding her current health condition during the liability portion of

 such a bifurcated trial, the opposing party was allowed to ask questions and present

 relevant evidence for the limited purpose of impeaching that testimony, even though
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

 such evidence would otherwise be inadmissible due to its relation to damages. When

 using a videotape to impeach a party’s testimony, the videotape must be properly

 authenticated, which was accomplished here by Plaintiff’s admission that she is the

 person in the videotape and that the videotape portrayed a time period relevant for

 impeachment purposes. Finally, the trial court was not required to give a limiting

 instruction regarding evidence admitted for impeachment purposes in the absence of

 a request for such an instruction.

 BACKGROUND

¶2 Plaintiff Hortense Pamela Hill sued Dr. David Warner Boone and Raleigh

 Orthopaedic Clinic, P.A. (collectively, “Defendants”) for malpractice arising from

 surgeries to her right foot. On 2 May 2014, Dr. Boone operated on Plaintiff’s right

 foot to remedy calcaneocuboid osteoarthritis. He used a 45 mm screw, which traveled

 7 to 10 mm past the bottom of Plaintiff’s bone into soft tissue. When Plaintiff reported

 experiencing pain in different areas of her foot, Dr. Boone took an x-ray from a

 different angle than previous x-rays taken after surgery, discovered the screw used

 in the initial surgery was too long, and recommended an additional surgery. During

 the second surgery on 13 June 2014, Dr. Boone removed the original screw and

 replaced it with a 36 mm screw.

¶3 In her Complaint filed 15 March 2017, Plaintiff alleged Dr. Boone negligently

 performed the 2 May 2014 surgery, and claimed she suffers “unremitting pain in her
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

 right foot . . . [which is] more intense after she walks for even a few feet” and that she

 “cannot stand more than a few minutes without severe pain in her right foot.” She

 also claimed she could not “partake in activities she previously enjoyed such as

 dancing, bowling, going to the movies, being a spectator at sporting events, traveling,

 and walking her dog.”

¶4 On 14 February 2019, Plaintiff moved to bifurcate the trial pursuant to

 N.C.G.S. § 1A-1, Rule 42(b)(3), which the trial court granted on 18 March 2019. The

 trial court’s decision to bifurcate the trial is not challenged by either party on appeal.

¶5 At trial, Plaintiff testified she currently uses a scooter and that she was not

 using a scooter to get around in November of 2013 when she re-injured her foot or

 prior to that. She testified that she continues to take the same amount of nerve

 blocking medication because of pain in her right foot as she did in 2014, the pain

 decreased but never went away after the surgery, and that she could not find

 anything that could be done to take the pain away–“basically it is . . . there and that’s

 it.” (Emphasis added). On cross-examination, she also stated “[t]he toes is what I

 meant can’t touch anything. . . . It’s my big toe and my three toes next to it is what

 can’t touch anything.”

¶6 On cross-examination and over Plaintiff’s objection, Defendants played and

 asked questions regarding an exhibit compiling videos of Plaintiff obtained via

 private surveillance, which “shows Plaintiff walking, visiting various stores,
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

 navigating street curbs on her allegedly injured foot, climbing stairs, driving around

 town, loading her car with groceries, babysitting her grandson, pushing a stroller,

 and carrying her grandson while navigating curbs, among other things.”

¶7 Plaintiff had been deposed on 30 August 2017, where she described the current

 condition of her foot extensively. At trial, Defendants’ first reference to that

 deposition occurred prior to playing the videotape surveillance and during a question

 by Defendants about Plaintiff quitting a job in 1999, to which Plaintiff objected. After

 that initial reference to the deposition, Defendants showed the videotape surveillance

 for the purpose of impeaching her testimony; then, Defendants played a video of

 Plaintiff’s deposition testimony where Plaintiff claimed she could not drive, walk, or

 wear shoes as she used to, could not walk her dog, would not be able to take her new

 grandchild in a stroller because she “can’t walk,” “[n]o one can touch [her] foot[,]” and

 “can’t have a blanket, a sock or shoe or anything on [her] foot . . . [i]t feels like it’s on

 fire . . . [and she is] in pain constantly.” Although Plaintiff objected to the prior

 reference to the deposition, Plaintiff did not object to Defendants playing the video of

 the deposition.1

 1 The admission of the video of Plaintiff’s deposition testimony is not dispositive to our

 analysis, as it was not admitted prior to the videotape surveillance, and did not open the door
 for the videotape surveillance. The videotape surveillance of Plaintiff was admitted first, so
 other testimony by Plaintiff would have had to open the door, and not the deposition video.
 See generally State v. Smith, 155 N.C. App. 500, 509-10, 573 S.E.2d 618, 624-25 (2002)
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

¶8 While Defendants cite the 26 March 2019 transcript to claim the deposition

 was introduced without objection “while cross-examining Plaintiff at trial,” the

 introduction without objection referenced in Defendants’ brief occurred on 26 March

 2019, upon Defendants’ re-direct examination of their own witness. While Plaintiff

 was on the stand, after the initial objected-to reference to the deposition and

 subsequent playing of the videotape surveillance, Defendants played the deposition

 video while cross-examining Plaintiff, without further objection. Plaintiff reaffirmed

 her deposition testimony, stating:

 [DEFENDANTS’ COUNSEL:] And during that deposition
 there were a number of questions where I was asking how
 you were doing after Dr. Boone’s surgeries?

 [PLAINTIFF:] Yes.

 [DEFENDANTS’ COUNSEL:] And at that point you told
 me that you had to be in bed most of time, right?

 [PLAINTIFF:] To keep my foot up, yes.

¶9 Outside of the presence of the jury, the trial court allowed the videotape

 surveillance to be admitted for Defendants’ purported impeachment purposes only.

¶ 10 During closing arguments, Defendants made the following statement

 regarding the videotape surveillance and Plaintiff’s testimony, to which Plaintiff did

 not object:

 (holding a party opens the door to impeachment through prior evidence or testimony he or
 she introduces), disc. rev. denied, 357 N.C. 255, 583 S.E.2d 287 (2003).
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

 You’ve seen the surveillance tapes, and a picture paints
 1,000 words. But -- and this thing about $20,000[.00] --
 $22,000[.00], how dare you spend $22,000[.00] following
 her around, sneaking around videoing her -- she attacked
 Dr. Boone and his livelihood and his profession and his
 integrity. And on that deposition that you saw on the
 video, she didn’t know we were going to get all her medical
 records and double-check, and we were going to do
 surveillance and double-check. And she attacked him
 aggressively on that. She said she couldn’t dance anymore
 because of his surgery. Remember that. That’s pretty
 aggressive.

 That’s just a -- to attribute her ability to dance to this
 surgery, given all the past, is an unfair attack and goes to
 her credibility. That’s why we showed you all that stuff.

 (Emphasis added).

¶ 11 The jury found for Defendants on liability on 29 March 2019. The trial judge

 entered judgment in favor of Defendants on 17 September 2019.

¶ 12 Plaintiff timely appealed pursuant to N.C.G.S. § 7A-27(b)(1) and argues the

 trial court improperly allowed Defendants to play the videotape surveillance, as it did

 not pertain to the liability portion of the bifurcated trial and was not properly

 authenticated. According to Plaintiff, Defendants improperly introduced the

 videotape surveillance as evidence and “featured” the videotape surveillance in their

 closing argument. Plaintiff also argues the trial court was required to give a limiting

 instruction regarding the videotape surveillance, and that Defendants improperly

 referenced the videotape surveillance in the closing of the liability portion of the trial,
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

 implying Defendants used the videotape surveillance as substantive evidence.

 ANALYSIS

 A. Standard of Review

¶ 13 According to N.C.G.S. § 1A-1, Rule 42(b)(3):

 Upon motion of any party in an action in tort wherein the
 plaintiff seeks damages exceeding one hundred fifty
 thousand dollars ($150,000[.00]), the [trial] court shall
 order separate trials for the issue of liability and the issue
 of damages, unless the [trial] court for good cause shown
 orders a single trial. Evidence relating solely to
 compensatory damages shall not be admissible until the
 trier of fact has determined that the defendant is liable.
 The same trier of fact that tries the issues relating to
 liability shall try the issues relating to damages.

 N.C.G.S. § 1A-1, Rule 42(b)(3) (2019) (emphasis added).

¶ 14 Both parties argue the standard of review is abuse of discretion for this appeal,

 which is incorrect. See State v. Coleman, 254 N.C. App. 497, 501-02, 803 S.E.2d 820,

 824 (2017) (noting we apply the correct standard of review, despite an appellant’s

 incorrect assertion of the standard of review). We note

 [t]he paramount duty of the trial judge is to supervise and
 control the course of the trial so as to prevent injustice. In
 discharging this duty, the [trial] court possesses broad
 discretionary powers sufficient to meet the circumstances
 of each case. This supervisory power encompasses the
 authority to structure the trial logically and to set the order
 of proof. Absent an abuse of discretion, the trial judge’s
 decisions in these matters will not be disturbed on appeal.

 The North Carolina Rules of Civil Procedure [specifically,
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

 Rule 42(b),] expressly preserve these inherent supervisory
 powers with regard to severance and bifurcation.

 In re Will of Hester, 320 N.C. 738, 741-42, 360 S.E.2d 801, 804 (citations omitted),

 reh’g denied, 321 N.C. 300, 362 S.E.2d 780 (1987); see Clarke v. Mikhail, 243 N.C.

 App. 677, 694, 779 S.E.2d 150, 163 (2015) (stating “we are asked to review the trial

 court’s reasoning” in denying a motion for a bifurcated trial under N.C.G.S. § 1A-1,

 Rule 42(b)(3) for abuse of discretion), disc. rev. denied, 782 S.E.2d 892 (2016); Webster

 Enters., Inc. v. Selective Ins. Co. of the Southeast, 125 N.C. App. 36, 46, 479 S.E.2d

 243, 249-50 (1997) (citation omitted) (“The trial court is vested with broad

 discretionary authority in determining whether to bifurcate a trial. This Court will

 not superimpose its judgment on the trial court absent a showing the trial court

 abused its discretion by entering an order manifestly unsupported by reason.”).

¶ 15 However, Plaintiff is not arguing on appeal that the trial court erred in

 granting a bifurcated trial, which would merit an abuse of discretion review. Rather,

 Plaintiff argues that the videotape evidence, allowed for impeachment purposes,

 pertained to damages rather than to issues of liability, and was not properly

 authenticated. The proper standard of review for whether the videotape surveillance

 evidence was relevant for impeachment purposes is first de novo under Rule 401.2

 2 According to Rule 607, “[t]he credibility of a witness may be attacked by any party,

 including the party calling him.” N.C.G.S. § 8C-1, Rule 607 (2019). However, “the
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

See Clarke, 243 N.C. App. at 695, 779 S.E.2d at 163 (emphasis added) (noting, despite

the trial court’s denial of the motion to bifurcate under N.C.G.S. § 1A-1, Rule 42(b)(3),

“[o]ur review confirms [the disputed evidence was] both relevant and that the trial

court did not abuse [its] discretion in determining that the [disputed evidence was]

not unfairly prejudicial to [the] [p]laintiff”). Accordingly, we first apply a de novo

standard of review to determine whether the videotape surveillance was offered for a

relevant purpose. If we determine the videotape surveillance was relevant for

impeachment purposes, we typically also analyze whether it should have been

excluded under Rule 403, which would be reviewed for abuse of discretion. See

Holland, 273 N.C. App. at 266, 848 S.E.2d at 284. However, Plaintiff did not address

Rule 403 in her brief, and has abandoned this argument on appeal. N.C. R. App. P.

28(a) (2021) (“Issues not presented and discussed in a party’s brief are deemed

abandoned.”).

impeaching proof must be relevant within the meaning of Rule 401 and Rule 403[.]” State v.
Bell, 87 N.C. App. 626, 633, 362 S.E.2d 288, 292 (1987) (emphasis omitted). We examine
whether the videotape surveillance “was offered for a proper, relevant purpose, to wit:
impeachment.” Holland v. French, 273 N.C. App. 252, 262, 848 S.E.2d 274, 282 (2020); see
generally State v. Cherry, 298 N.C. 86, 98, 257 S.E.2d 551, 559 (1979) (“The language of [a]
statute [governing a phase of a bifurcated trial] does not alter the usual rules of evidence or
impair the trial judge’s power to rule on the admissibility of evidence. . . . Generally, evidence
is relevant and admissible when it tends to shed any light on the matter at issue.”), cert.
denied, 446 U.S. 941, 64 L. Ed. 2d 796 (1980).
 We also note that we review de novo whether a trial court complied with a statutory
mandate, in this case the prohibition in N.C.G.S. § 1A-1, Rule 42(b)(3) of the admission of
damages evidence during the liability portion of a bifurcated trial. See In re E.A., 267 N.C.
App. 396, 399, 833 S.E.2d 630, 632 (2019).
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

¶ 16 “The admissibility of evidence is governed by a threshold inquiry into its

 relevance. In order to be relevant, the evidence must have a logical tendency to prove

 any fact that is of consequence in the case being litigated.” State v. Holmes, 263 N.C.

 App. 289, 302, 822 S.E.2d 708, 720 (2018), disc. rev. denied, 372 N.C. 97, 824 S.E.2d

 415 (2019). “Trial court rulings on relevancy technically are not discretionary.” Id.

 “Whether evidence is relevant is a question of law, [and] we review the trial court’s

 admission of the evidence de novo.” State v. Kirby, 206 N.C. App. 446, 456, 697 S.E.2d

 496, 503 (2010).

¶ 17 Further, the correct standard of review regarding authentication of a videotape

 is de novo. State v. Clemons, 852 S.E.2d 671, 677-78 & n.3 (N.C. App. 2020); see also

 State v. Snead, 239 N.C. App. 439, 443, 768 S.E.2d 344, 347 (2015) (“A trial court’s

 determination as to whether a videotape has been properly authenticated is reviewed

 de novo on appeal.”), rev’d in part on other grounds, 368 N.C. 811, 783 S.E.2d 733

 (2016).

¶ 18 Accordingly, we conduct a de novo review to determine whether the videotape

 surveillance was both relevant for impeachment purposes and properly

 authenticated.

¶ 19 We note it would be error under N.C.G.S. § 1A-1, Rule 42(b)(3) to allow the

 videotape surveillance for substantive purposes in the liability portion of the

 bifurcated trial. The videotape surveillance clearly depicts evidence that would
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

 ordinarily solely be related to compensatory damages and prejudice Plaintiff’s case

 as to liability. However, if the door was opened by Plaintiff on direct examination

 with testimony regarding her current health status, the videotape surveillance would

 be relevant for impeachment purposes. See generally State v. Safrit, 145 N.C. App.

 541, 549, 551 S.E.2d 516, 522 (2001); Harrison v. Garrett, 132 N.C. 172, 176-77, 43

 S.E. 594, 596 (1903). Arguments related to whether Plaintiff properly opened the

 door deserve close scrutiny because of the public policy expressed by our General

 Assembly in N.C.G.S. § 1A-1, Rule 42(b)(3)–“[e]vidence relating solely to

 compensatory damages shall not be admissible until the trier of fact has determined

 that the defendant is liable.” N.C.G.S. § 1A-1, Rule 42(b)(3) (2019) (emphases added).

 We first address whether the video was properly authenticated because, if it was not,

 this would end our inquiry.

 B. Authentication of the Videotape Surveillance

¶ 20 “The requirement of authentication or identification as a condition precedent

 to admissibility is satisfied by evidence sufficient to support a finding that the matter

 in question is what its proponent claims.” N.C.G.S. § 8C-1, Rule 901(a) (2019). Our

 initial review of the transcript and exhibits reveals the videotape surveillance was

 not properly authenticated under typical requirements. Defendants offered no

 testimony from the creator of the video to show that the recording process was reliable

 and “that the matter in question is what its proponent claims.” See State v. Snead,
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

 368 N.C. 811, 814, 783 S.E.2d 733, 736 (2016) (quoting N.C.G.S. § 8C-1, Rule 901(a)

 (2015)).

¶ 21 However, Defendants attempted to authenticate the videotape surveillance by

 cross-examining Plaintiff. While playing the videotape surveillance, which portrayed

 Plaintiff with a time-and-date stamp on the screen, Defendants asked Plaintiff the

 following questions:

 [DEFENDANTS’ COUNSEL:] Is this you? Is that your car?

 [PLAINTIFF:] Correct.

 ....

 [DEFENDANTS’ COUNSEL:] Can you tell if that’s you?

 [PLAINTIFF:] Yes, it’s me.

 [DEFENDANTS’ COUNSEL:] And this is a different scene
 on [16 October 2017]?

 [PLAINTIFF:] Yes.

 ....

 [DEFENDANTS’ COUNSEL:] This is still you, correct?

 [PLAINTIFF:] Yes.

 [DEFENDANTS’ COUNSEL:] Is that you?

 [PLAINTIFF:] Yes.

 [DEFENDANTS’ COUNSEL:] On [16 October 2017]?

 [PLAINTIFF:] Yes.
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

....

[DEFENDANTS’ COUNSEL:] Is that you?

[PLAINTIFF:] Yes.

[DEFENDANTS’ COUNSEL:] Where are you there?

[PLAINTIFF:] At Home Depot, I guess, or Lowe’s. I’m not
sure.

[DEFENDANTS’ COUNSEL:] And this is the afternoon,
according to our timestamp, of [16 October] at 2:53 p.m.[?]

[PLAINTIFF:] Yes.

[DEFENDANTS’ COUNSEL:] And here’s [25 October]. Is
that you?

[PLAINTIFF:] Yes.

[DEFENDANTS’ COUNSEL:] [25 October] at 10:23 a.m.
according to the timestamp, right?

[PLAINTIFF:] Correct.

....

[DEFENDANTS’ COUNSEL:] Is this you here?

[PLAINTIFF:] Yes.

[DEFENDANTS’ COUNSEL:] [21 December], just, for the
record, 2017, 10:32 a.m. Is that you?

[PLAINTIFF:] Yes.

....

[DEFENDANTS’ COUNSEL:] Is this you in the New York
Mets shirt?
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

[PLAINTIFF:] Correct.

[DEFENDANTS’ COUNSEL:] [26 April 2018] according to
the timestamp.

[PLAINTIFF:] Correct.

....

[PLAINTIFF’S COUNSEL:] Your Honor, I raise a separate
objection to (inaudible). That’s her grandchild and
(inaudible) I don’t think that should be shown.

[THE COURT:] Overruled.

[DEFENDANTS’ COUNSEL:] Is this you on [26 April
2018] at 1:20 p.m.?

[PLAINTIFF:] Yes.

[DEFENDANTS’ COUNSEL:] Is that your grandchild that
you’re with?

[PLAINTIFF:] Correct.

[DEFENDANTS’ COUNSEL:] In the stroller?

[PLAINTIFF:] Yes.

....

[DEFENDANTS’ COUNSEL:] Now, we’re going to a new
scene. Is that you?

[PLAINTIFF:] Yes.

[DEFENDANTS’ COUNSEL:] Carrying your -- is that your
grandchild?

[PLAINTIFF:] Yes.

[DEFENDANTS’ COUNSEL:] [11 May 2018]?
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

 [PLAINTIFF:] Yes.

 [DEFENDANTS’ COUNSEL:] And according to the
 timestamp 11:44 and now 11:45 a.m.?

 [PLAINTIFF:] Correct.

 ....

 [DEFENDANTS’ COUNSEL:] And any trouble carrying
 the grandson here?

 [PLAINTIFF:] Yes, as you can see I’m limping more, a little
 more.

 [DEFENDANTS’ COUNSEL:] How old is he in May of
 2018?

 [PLAINTIFF:] He was born in September of [2017], so he
 may be about six months.

 [DEFENDANTS’ COUNSEL:] Do you see where he’s
 sitting in the front of the shopping cart? Can you see that?

 [PLAINTIFF:] Yes.

 [DEFENDANTS’ COUNSEL:] How did he get in that?

 [PLAINTIFF:] I put him in there.

¶ 22 Plaintiff’s confirmation that the videotape surveillance apparently portrayed

 her and confirmation of what the video purported to suggest was the time and date

 of the videos did not constitute a confirmation that the video portrayed her on those

 days or times, or even at a relevant time period to show her current health status.

 Such attempts by Defendants to authenticate the videotape surveillance via

 Plaintiff’s admission, without more, would have been insufficient.
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

¶ 23 However, Plaintiff’s testimony regarding her grandchild, who was with her in

 some of the videos, constitutes an admission regarding her health status at a relevant

 time period–2017 and 2018–as she admits when her grandchild was born and

 approximately how old he was in the video. Plaintiff’s admission regarding a

 depiction of her at a relevant time period vis-à-vis her health status, years after the

 surgery and close to the trial date, constituted an authentication of the portions of

 the videotape surveillance that included her grandchild, and were appropriate to use,

 if relevant, for impeachment purposes.3 See id. at 815, 783 S.E.2d at 737 (“Given that

 [the party allegedly portrayed in the video] freely admitted that he is one of the two

 people seen in the video stealing shirts and that he in fact stole the shirts, he offered

 the trial court no reason to doubt the reliability or accuracy of the footage contained

 in the video.”). The videotape surveillance was authenticated via Plaintiff’s

 admissions regarding her grandchild, and we now determine whether the videotape

 surveillance was relevant for impeachment purposes.

 C. Relevance of the Videotape Surveillance for Impeachment Purposes

¶ 24 A longstanding principle within our jurisprudence provides that “[t]he primary

 purpose of impeachment is to reduce or discount the credibility of a witness for the

 purpose of inducing the jury to give less weight to his testimony in arriving at the

 3 We note Plaintiff did not make an argument regarding the exclusion of the entire

 video in the event a portion is determined to be authenticated.
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

 ultimate facts in the case.” State v. Bell, 249 N.C. 379, 381, 106 S.E.2d 495, 498

 (1959). “Impeachment evidence has been defined as evidence used to undermine a

 witness’s credibility, with any circumstance tending to show a defect in the witness’s

 perception, memory, narration or veracity relevant to this purpose.” State v. Gettys,

 243 N.C. App. 590, 595, 777 S.E.2d 351, 356 (2015), disc. rev. denied and appeal

 dismissed, 368 N.C. 685, 781 S.E.2d 798 (2016).

¶ 25 The opposing party can impeach a witness by offering evidence of that

 witness’s prior inconsistent statements or dishonesty. See Thompson v. Lenoir

 Transfer Co., 72 N.C. App. 348, 350-51, 324 S.E.2d 619, 620-21 (1985); State v.

 Aguallo, 322 N.C. 818, 824, 370 S.E.2d 676, 679 (1988) (“Prior statements by a [party]

 [including prior testimony] are a proper subject of inquiry by cross-examination.”);

 State v. Anderson, 88 N.C. App. 545, 548, 364 S.E.2d 163, 165 (1988) (marks and

 citation omitted) (“[I]mpeachment is an attack upon the credibility of a witness, and

 is accomplished by such methods as showing the existence of bias; a prior inconsistent

 statement; untruthful or dishonest character; or defective ability to observe,

 remember, or recount the matter about which the witness testifies.”).

¶ 26 “It is well-settled law in North Carolina that where one party introduces

 evidence as to a particular fact or transaction, the other party is entitled to introduce

 evidence in explanation or rebuttal thereof, even though such latter evidence would

 be incompetent or irrelevant had it been offered initially.” Safrit, 145 N.C. App. at
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

 549, 551 S.E.2d at 522 (marks omitted); see generally Harrison, 132 N.C. at 176-77,

 43 S.E. at 596. If Plaintiff opened the door to impeachment regarding her current

 health status via testimony on direct examination, Defendants could have impeached

 her with the authenticated videotape surveillance of her carrying her grandchild

 while walking and performing other activities on her feet.4

¶ 27 While Plaintiff did not open the door to impeachment via the claims in her

 Complaint and deposition, as argued briefly by Defendants on appeal,5 that she was

 unable to drive, stand, walk, or have her foot touched due to unremitting pain, her

 following testimony on direct examination opened the door to further questions

 regarding the nature of her pain: that she currently uses a scooter after not using one

 before the injury and subsequent surgery; her current need to take the same amount

 of nerve blocking medication as she took immediately after her second surgery due to

 continued pain; the permanent nature of her injury and pain; and that the pain “was

 4
 In addition to arguing the videotape surveillance only pertained to damages,
 Plaintiff cites an unpublished case to argue she did not open the door to impeachment via the
 video. See Kosek v. Barnes, COA 06-76, 181 N.C. App. 149, 639 S.E.2d 453, 2007 WL 3581
 (2007) (unpublished). However, this unpublished case is unpersuasive, as there we deferred
 to the trial court’s ruling to exclude certain evidence to impeach under Rule 403 during the
 compensatory damages phase of a bifurcated trial. Id. at *2-*3. Our analysis in Kosek
 affirmed that a witness’s credibility is impeachable, but such evidence must comply with
 Rules 401 and 403. Id. As acknowledged above, Plaintiff abandoned any argument regarding
 Rule 403.
 5 Defendants’ brief includes the following statement to further the argument that the

 trial court properly admitted the videotape surveillance to impeach Plaintiff’s testimony:
 “Defendants admitted into evidence and showed the jury portions of Plaintiff’s videotaped
 deposition without any objection from Plaintiff’s counsel.”
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

 [a] burning, numbing, tingly, aching pain where nothing could touch [her] foot.” Such

 testimony, taken together, opened the door to questions about the nature of Plaintiff’s

 recent and current pain on cross-examination.

¶ 28 In response to questions on cross-examination regarding the nature of her

 pain, Plaintiff testified that her toes cannot touch anything. According to Plaintiff,

 “[i]t’s my big toe and my three toes next to it is what can’t touch anything.” Plaintiff’s

 statement that her toes cannot touch anything allowed Defendants to impeach her

 testimony via the videotape surveillance. The videotape surveillance, which showed

 Plaintiff engaging in activities such as walking, lifting, navigating a curb, and

 opening the driver’s side door of her car, was relevant to contradict her credibility,

 particularly her truthfulness about unremitting pain, that her toes cannot touch

 anything, and inferences that she needed a scooter to move after her injury and

 surgery. The videotape surveillance evidence was relevant for impeachment

 purposes under Rule 401. The trial court did not err in allowing Defendants to play

 the videotape surveillance for the jury while impeaching Plaintiff’s testimony.

 D. Lack of a Limiting Instruction

¶ 29 Plaintiff argues the trial court was required to give a limiting instruction

 regarding the videotape surveillance and cites State v. Strickland to support her

 argument. State v. Strickland, 276 N.C. 253, 173 S.E.2d 129 (1970). According to

 Strickland,
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

 [a]side from the constitutional and procedural questions
 here presented, we think it appropriate to observe that the
 use of properly authenticated moving pictures to illustrate
 a witness’ testimony may be of invaluable aid in the jury’s
 search for a verdict that speaks the truth. However, the
 powerful impact of this type of evidence requires the trial
 judge to examine carefully into its authenticity, relevancy,
 and competency, and–if he finds it to be competent–to give
 the jury proper limiting instructions at the time it is
 introduced.

 Id. at 262, 173 S.E.2d at 135.

¶ 30 At the time Defendants introduced the video while cross-examining Plaintiff,

 her counsel objected, and the trial court overruled the objection. The trial court did

 not give a limiting instruction. Rather, the trial court’s subsequent references to the

 videotape surveillance stated it was for impeachment purposes only, but those

 references occurred outside of the presence of the jury. Plaintiff did not request the

 jury be given a limiting instruction. Plaintiff argues the trial court committed

 reversible error by not sua sponte issuing a limiting instruction regarding the video.

 This is not the law in North Carolina.

¶ 31 Our Supreme Court has held “[t]he trial court is not required to instruct the

 jury with respect to evidence . . . in the absence of a request to do so.” Williams v.

 Bethany Volunteer Fire Dept., 307 N.C. 430, 435, 298 S.E.2d 352, 355 (1983) (holding

 that, where they failed to request a limiting instruction, “[parties] cannot [] complain

 [on appeal] that they were hurt by the introduction of evidence whose thrust they
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

 may have been able to limit”). “The admission of evidence which is competent for a

 restricted purpose without limiting instructions will not be held [to be] error in the

 absence of a request . . . for such limiting instructions.” Holland, 273 N.C. App. at

 267, 848 S.E.2d at 285; see also State v. Whitley, 311 N.C. 656, 664, 319 S.E.2d 584,

 589 (1984) (“The admission without limitation of evidence which is competent for a

 restricted purpose will not be held to be error in the absence of a request . . . for

 limiting instructions.”); State v. Maccia, 311 N.C. 222, 228-29, 316 S.E.2d 241, 245

 (1984) (“Although it is true that the jury was not instructed in the present case to

 limit its consideration of the evidence to purposes of impeachment, it does not appear

 from the record that the defendant requested a limiting instruction. The admission

 of evidence which is competent for a restricted purpose will not be held error in the

 absence of a request by the defendant for limiting instructions.”); State v. Handsome,

 300 N.C. 313, 319, 266 S.E.2d 670, 675 (1980) (“[W]here the defendant does not

 request that the limiting instruction be given, as he did not in this case, it is not error

 when the instruction is not given.”). As Plaintiff did not request a limiting

 instruction, the trial court did not commit error by not issuing a limiting instruction

 regarding the videotape surveillance.

 E. Reference to Videotape Surveillance in Defendants’ Closing Argument

¶ 32 Finally, Plaintiff argues Defendants improperly referenced the videotape

 surveillance in closing, implying Defendants used it as substantive evidence. During
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

 closing, Defendants stated:

 [DEFENDANTS’ COUNSEL:] . . . . You’ve seen the
 surveillance tapes, and a picture paints 1,000 words. But
 -- and this thing about $20,000[.00] -- $22,000[.00], how
 dare you spend $22,000[.00] following her around,
 sneaking around videoing her -- she attacked Dr. Boone
 and his livelihood and his profession and his integrity. And
 on that deposition that you saw on the video, she didn’t
 know we were going to get all her medical records and
 double-check, and we were going to do surveillance and
 double-check. And she attacked him aggressively on that.
 She said she couldn’t dance anymore because of his surgery.
 Remember that. That’s pretty aggressive.

 That’s just a -- to attribute her ability to dance to this
 surgery, given all the past, is an unfair attack and goes to
 her credibility. That’s why we showed you all that stuff.
 But, to finish my discussion on the law, before we get all
 that -- and I want to show you that videotape again, so you
 will understand how aggressive the attack was and why
 the fight back from the defense was proportionate. It was
 appropriate. This is the second half of the law. I told you
 that standard of care.

 [PLAINTIFF’S COUNSEL:] Objection, Your Honor. This
 is beyond the jury instructions.

 (Emphases added).

¶ 33 Plaintiff did not object to Defendants’ reference to the videotape surveillance

 during closing, but rather objected to a later reference to the standard of care and the

 law. Plaintiff’s argument regarding Defendants’ reference to the videotape

 surveillance during closing is not preserved for appeal. See N.C. R. App. P. 10(a)(1)

 (2021) (“In order to preserve an issue for appellate review, a party must have
 HILL V. BOONE, ET AL.

 2021-NCCOA-490

 Opinion of the Court

 presented to the trial court a timely request, objection, or motion, stating the specific

 grounds for the ruling the party desired the court to make if the specific grounds were

 not apparent from the context.”); State v. Thompson, 265 N.C. App. 576, 586, 827

 S.E.2d 556, 563 (2019) (holding that a party fails to preserve for appellate review a

 challenge to remarks made during closing argument in the absence of an objection).

 CONCLUSION

¶ 34 The videotape surveillance of Plaintiff was authenticated by her admission

 that she was both the subject of the videotape and that she was carrying her

 grandchild at a relevant period of time. The videotape surveillance was used for a

 proper purpose when Plaintiff opened the door to impeachment through her

 testimony regarding the current nature of her injury, and the videotape surveillance

 was relevant for impeachment purposes, as it related to Plaintiff’s credibility as a

 witness. The trial court was not required to give a limiting instruction regarding the

 videotape surveillance when Plaintiff did not request such an instruction, and

 Plaintiff waived her challenge to Defendants’ reference to the videotape surveillance

 in closing by not objecting to such a reference.

 AFFIRMED.

 Judges ZACHARY and CARPENTER concur.