HARRISON v. GARRETT.

(Filed March 17, 1903.)

1. EVIDENCE—*Instructions—Libel and Slander.*
   It is error to permit evidence competent for one purpose only to be considered generally by the jury without instructions restricting it to the special purpose for which it is admissible.

2. LIBEL AND SLANDER—*Privileged Communications—Evidence.*
   In an action for libel, to make a communication privileged, it must be made *bona fide* about something in which the writer has an interest or duty, the person addressed a corresponding interest or duty, and in protection of that interest, or the performance of that duty.

3. LIBEL AND SLANDER—*Evidence—Malice.*
   In an action for libel, evidence of a public rumor affecting the character of plaintiff does not tend to disprove malice or show good faith in the absence of evidence that the defendant at the time he made the publication had knowledge of the rumor and acted thereon.

4. PLEADINGS—*Complaint—Waiver—Demurrer—Libel and Slander.*
   When, in an action for libel, the publication is not libelous *per se,* and the complainant fails to allege special damage, a failure to demur waives the defect.

ACTION by T. N. Harrison against Paul Garrett, heard by Judge *Francis D. Winston* and a jury, at August Term, 1901, of the Superior Court of HALIFAX County. From a judgment for the defendant, the plaintiff appealed.

*Thos. N. Hill, Day & Bell* and *F. H. Busbee & Son,* for the plaintiff.

*E. L. Travis, W. E. Daniel* and *Claude Kitchin,* for the defendant.

WALKER, J. This is an action to recover damages for libel, in which the plaintiff alleged that on May 30, 1898, the defendant, over the name of Garrett & Co., mailed a certain letter to his agent or employee in Belton, Texas, which contained the following libellous matter: "Replying to your favor of 26th we beg to say that it occurs to us you have seen a circular gotten out by this firm referred to. This circular consists, in the first part, of a certificate from the chairman of the County Board of Commissioners, one of our "populist" effusions, who, as Sam Jones says, 'has risen to the top' among the scum in the recent political 'boil.' We presume a few dollars would buy almost any sort of a certificate from him." The court submitted to the jury four issues as follows:

1. Did the defendant compose and publish of the plaintiff the false and defamatory words set out in the complaint?

2. Was the occasion on which they were written privileged?

3. If so, was the defendant actuated by express malice in writing and publishing them?

4. What damage if any has the plaintiff sustained by said written and published words?

The plaintiff introduced testimony for the purpose of showing that the alleged libel was published with malice, and on the cross examination of the plaintiff and of several of the

plaintiff's witnesses, the defendant's counsel was permitted to prove, over the plaintiff's objection, that in 1898 there was a public rumor that any man who affiliated with the fusionists was a bad and corrupt man. This evidence was admitted generally and, if it was competent at all, it was not confined within its proper limits.

We do not by any means wish to be understood as ruling that this evidence was competent for any purpose, or that it had in any degree a tendency to prove plaintiff's general reputation or to impeach his character, but if it was competent in any view, it certainly was not so as to all of the issues upon which the jury were required to pass; and, when objection was made to the evidence, it was the duty of the presiding judge, either at the time of the objection or in his charge, to have told the jury for what purpose it could be considered by them. We are unable to know what use was made of it, or the impression it may have produced upon the jury, or what influence it had upon the decision of any question to which it could not possibly have been relevant.

It has often been held by this court that, when testimony proposed to be introduced by a party is competent for one purpose and not for another and is objected to in apt time, it is the duty of the court to instruct the jury as to how it shall be considered and applied by them. *Burton v. Railroad,* 84 N. C., 192; *State v. Powell,* 106 N. C., 635; *State v. Bullard,* 79 N. C., 627; *State v. Oxendine,* 107 N. C., 783; *Tankard v. Railroad,* 117 N. C., 558. The charge of the court is fully set out in the record and it does not appear that the court, either at the time the objection was made or in its instructions to the jury, cautioned them as to their duty in regard to this testimony.

But this evidence was incompetent in another respect. The plaintiff was introduced as a witness in his own behalf, and it appears that evidence of mere rumor in the community,

as to the standing of persons of certain political affiliations, was admitted generally and not confined to any purpose for which it was competent. The defendant therefore was left unrestrained in the use he could make of it, and he may have used it, and no doubt did, for the purpose of assailing the plaintiff's credibility as a witness. Whether it was used for this purpose or not by counsel in argument, the jury were left without any instructions from the court as to the legal nature and effect of the evidence, and they were at liberty to consider it as impeaching the plaintiff and impairing his credibility.

Public rumor is not always the equivalent of general reputation, and certainly not of general character, so as to be competent for the purpose of discrediting a witness. That will depend largely upon the character of the rumor and the extent of its circulation, and finally upon the impression it has made upon the minds of the people in the community where the party, whose credibility is in question, lives. The question was not what was the rumor, but what was the general reputation or character of the witness, and it is only the latter that can be given in evidence for the purpose of supporting or impeaching the witness. A striking illustration of this principle is furnished in this very case. The witness J. H. House testified that there was such a rumor "with some people, but not with the mass," and the witness Dr. O'Brian stated that the plaintiff's general character is good, that he stands well socially and is a good man, and that his politics had not affected his social standing, and yet this evidence as to the rumor was elicited by the defendant with the consent of the court and against the plaintiff's protest, and presumably was used to assail the credit of the plaintiff as a witness. The answers given by the two witnesses just mentioned emphasize the importance of explaining to the jury the nature of the evidence and the purpose for which it might have been considered by them. The question was not what was the

rumor as to a class of men, but what was the plaintiff's reputation or character in the community. As far as the evidence shows, the plaintiff's character, as we have said, has not been affected by the rumor, and we do not think that under the facts and circumstances of this case the evidence of the rumor should have been admitted, without explaining to the jury how it could be considered.

It may be added that there is nothing in the case to show that the defendant had heard the rumor, and we do not therefore perceive how the evidence was competent upon the question of malice or good faith.

This case was tried upon the theory that the communication of Garrett to his employee in Texas (Saunders) was one of qualified privilege, in accordance with the rule that any communication between employer and employee is protected by this privilege, provided it is made *bona fide* about something in which (1) the speaker or writer has an interest or duty; (2) the hearer or person addressed has a corresponding interest or duty; and provided (3) the statement is made in protection of that interest or in the performance of that duty. There must also be an honest belief in the truth of the statement. When these facts are found to exist, the communication is protected by the law unless the plaintiff can show malice on the defendant's part, the burden in this respect being upon the plaintiff. 1 Jaggard on Torts (H. S.) 530. But while all this is true, evidence as to a public rumor could not possibly tend to disprove malice or to show the good faith of the defendant, unless it was shown that he had knowledge of the rumor and acted upon it. How can any one be heard to say that his conduct in regard to a particular transaction was influenced by something of which at the time he had no knowledge?

It is not an answer to the contention of the plaintiff, that this evidence was improperly admitted, to say that the

plaintiff has introduced the witnesses, who on cross examination gave the testimony, for the purpose of proving his own good character, and that the evidence as to the rumor having been elicited on cross examination was intended to meet and overcome the testimony as to the plaintiff's good character, and that the plaintiff in that way opened the door and let in the evidence. The defendant first opened the door when he cross examined the plaintiff himself as to the rumor, and it can make no difference that the matter was afterwards referred to in the cross examination of witnesses who had been introduced to establish the plaintiff's good character. Even if it is true, as contended by the defendant, that it was made competent as impeaching testimony because the plaintiff had opened the door, the court, when the evidence was objected to, should have restricted its use to the purpose for which it was competent.

The plaintiff moved to dismiss the action because the complaint does not state facts sufficient to constitute a cause of action. This motion can be made even in this court, but the action will be dismissed only when the court below had no jurisdiction, or when it affirmatively appears that the cause of action is defective and not when it is merely defectively stated and the defect can be cured by amendment. The defect alleged in this case is that the matter contained in the letter of the defendant to Saunders is not libellous *per se* and that the plaintiff does not allege special damage. If the words of the letter are not libellous *per se* and could only become actionable if special damage be alleged, the complaint, if there has been a failure to allege therein special damage, would only be a defective statement of a cause of action as distinguished from the statement of a defective cause of action and the defect was waived or cured, and there was an aider when the defendant answered the complaint. The defect could be taken advantage of only by a demurrer in the

court below.   *Bennett v. Tel. Co.,* 128 N. C., 103; *Mizell v. Ruffin,* 118 N. C., 69.

In the case of *Johnson v. Finch,* 93 N. C., 205, cited in the defendant's brief, the plaintiff sought to recover damages for false arrest, and failed to allege in the complaint that the action, in which the order of arrest was issued, had been terminated.   It was held that this was merely a defective statement of a cause of action, although the plaintiff had failed to allege a fact which was *essential* in order to constitute a good cause of action for the arrest.

In *Garrett v. Trotter,* 65 N. C., 430, the court by Pearson, C. J., says:   "When there is a defect in substance, as an omission of a material allegation in the complaint, it is a defective statement of a cause of action and the demurrer must specify it, to the end that it may be amended by making the (necessary) allegation."

That a failure to point out the defect by demurrer and an election to answer is a waiver of the defect, has repeatedly been decided by this court.   Clark's Code (3 Ed.), Sec. 242, and notes.

The distinction between a defective cause of action and a defective statement of a good cause of action is well stated by Clark, J., in *Bank v. Cocke,* 127 N. C., 467, 473.   He says "If the defendant had demurred, could the judge have cured it by permitting the amended averment?   If so, the failure to demur waives the objection.   If, on the other hand the defect is so organic that permission to amend cannot cure it, then it is a defective statement of which advantage could be taken here."

If there is any defect in this complaint, it surely is not organic and could perhaps have easily been removed or remedied if a demurrer had been filed in the court below and the defect had been specified therein.

For the reasons given the motion to dismiss is denied, and

because of the erroneous rulings of the court upon the evidence, the issues in the case must be submitted to another jury.

New Trial.