DIETZ, Judge.
 

 *498
 
 Defendant Matthew Coleman appeals his conviction for voluntary manslaughter. At trial, Coleman admitted that he shot and killed his wife. But he argued that, as a result of diabetes, his blood sugar was dangerously low at the time of the shooting, causing Coleman to act in a manner that was not voluntary.
 

 On appeal, Coleman challenges the sufficiency of the evidence and argues that the trial court committed plain error in various evidentiary and instructional rulings. As explained below, there was sufficient evidence to send the charge of voluntary manslaughter to the jury and the trial court's rulings were well within the court's sound discretion. Accordingly, we find no error in the trial court's judgment.
 

 Facts and Procedural History
 

 On 22 April 2013, Matthew Coleman and his wife went to the grocery store and returned home around 1 p.m. Soon after, Coleman's neighbor, Barbara Hardee, observed Coleman walking toward her house carrying three briefcases and an unidentified object. Coleman dropped the object (later discovered to be a gun) in a brush pile in the yard. Coleman then approached Ms. Hardee's house and told her that he killed his wife. Ms. Hardee told Coleman not to "kid that way," but Coleman responded, "I'm not kidding, didn't you hear the shot?"
 

 *499
 
 Ms. Hardee called 911 while her husband, Roland Hardee, checked Coleman for weapons. Mr. Hardee was concerned about Coleman's blood sugar level and gave Coleman a granola bar. Mr. Hardee asked Coleman why he shot his wife and Coleman responded, "I don't know, something told me." When Mr. Hardee asked Coleman if it was an accident, Coleman stated "I just went to get my gun and couldn't find it, then I just shot her."
 

 Police and EMS were dispatched and arrived at approximately 1:40 p.m. In their initial investigation, law enforcement determined that Coleman shot his wife, picked up three briefcases and the gun, locked the house, walked past his truck, threw the gun into a brush pile, and then approached Ms. Hardee and told her that he shot his wife. In the three briefcases, the police found approximately $110,000 in cash, savings bonds, and foreign currency, and various important documents. Coleman told a police officer that "he didn't know why he had done it, why did he kill the woman he loved, they had plans together, plans he made." Coleman also said, "Why did I kill the woman I loved? We never fought in 30 years. We had plans together, plans I made. How could I do such a horrible thing?" Coleman then told the officer that his blood sugar was dropping.
 

 On 31 May 2013, the State indicted Coleman for first degree murder. Coleman entered a plea of not guilty and gave notice of his intent to assert the affirmative defense of automatism based on his low blood sugar at the time of the shooting. Coleman was diagnosed as a Type I diabetic in 1981 and had a history of hypoglycemic episodes where his blood sugar dropped to very low levels. The evidence presented at trial included a glucometer reading of 39 from 1:22 p.m. on 21 April 2013, along with a handwritten log of corresponding glucose readings indicating that the glucometer's date stamps may have been one day behind, meaning the 39 reading could have been recorded the day Coleman shot his wife.
 

 At trial, Coleman presented expert testimony from Dr. George Corvin, a psychiatrist Coleman retained to evaluate him. Dr. Corvin testified that, in his opinion, Coleman was acting in a state of automatism due to hypoglycemia
 
 *823
 
 when he shot his wife. On cross-examination, over Coleman's objection, the State questioned Dr. Corvin about the amount of fees he was paid to testify as a defense expert in criminal cases from 2013-2015.
 

 The State presented expert testimony from Dr. Warner Burch, an endocrinologist, who testified that in his opinion, Coleman was not in a
 
 *500
 
 state of automatism due to hypoglycemia at the time of the offense. This testimony was admitted over Coleman's objection to Dr. Burch giving an opinion as to Coleman's state of mind.
 

 The jury found Coleman guilty of the lesser-included offense of voluntary manslaughter. The trial court sentenced Coleman to 64-89 months in prison. Coleman timely appealed.
 

 Analysis
 

 Coleman raises five issues on appeal. We address each in turn below.
 

 I. Denial of motion for directed verdict
 

 Coleman first argues that the trial court erred by denying his motion for a directed verdict of not guilty because the State failed to present evidence of all of the required elements of first degree murder and the lesser-included offenses of second degree murder and voluntary manslaughter. We disagree.
 

 In a criminal case, a motion for directed verdict and a motion to dismiss have the same effect and are reviewed under the same standard of review on appeal.
 
 See
 

 State v. Mize
 
 ,
 
 315 N.C. 285
 
 , 290,
 
 337 S.E.2d 562
 
 , 565 (1985). "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo
 
 ."
 
 State v. Smith
 
 ,
 
 186 N.C.App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied."
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith
 
 ,
 
 300 N.C. 71
 
 , 78,
 
 265 S.E.2d 164
 
 , 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor."
 
 State v. Rose
 
 ,
 
 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994).
 

 Although Coleman argues that the trial court erred in denying his motion for directed verdict on all of the charges, the jury found Coleman not guilty of the greater offenses of first and second degree murder, convicting him only of voluntary manslaughter. Therefore, any error in the denial of Coleman's motion as to the murder charges is not prejudicial and we need only address his argument as to the voluntary manslaughter charge.
 
 See
 
 N.C. Gen. Stat. § 15A-1443(a).
 

 *501
 
 "Voluntary manslaughter is the unlawful killing of a human being without malice and without premeditation and deliberation."
 
 State v. Norris
 
 ,
 
 303 N.C. 526
 
 , 529,
 
 279 S.E.2d 570
 
 , 572 (1981). Voluntary manslaughter requires the State to prove two elements: "(1) Defendant killed [the victim] by an intentional and unlawful act and (2) Defendant's act was the proximate cause of [the victim's] death."
 
 State v. English
 
 ,
 
 241 N.C.App. 98
 
 , 105,
 
 772 S.E.2d 740
 
 , 745 (2015) ;
 
 see also
 
 N.C.P.I.-Crim. 206.13.
 

 Coleman argues that the trial court should have granted his motion for directed verdict on the voluntary manslaughter charge because "no evidence was presented by the State to even suggest that [Coleman] acted in the heat of passion." We reject this argument because acting in the "heat of passion" is not an essential element of voluntary manslaughter. To be sure, evidence that a defendant acted in the heat of passion can negate the malice element required for the greater offenses of first or second degree murder.
 
 See
 

 State v. Rainey
 
 ,
 
 154 N.C.App. 282
 
 , 288,
 
 574 S.E.2d 25
 
 , 29 (2002). But to prove voluntary manslaughter, the State need not prove that the defendant acted in the heat of passion; instead, the State must prove only that the defendant killed the victim by an intentional and unlawful act and that the defendant's act was a proximate cause of the victim's death.
 

 *824
 
 Here, the State presented evidence showing that Coleman shot his wife and admitted that he shot her. His sole defense was that he did not act voluntarily due to his low blood sugar, which placed him in a state of automatism. The State presented admissible expert testimony that Coleman was not in a state of automatism when he shot his wife. Thus, there was substantial evidence from which a reasonable jury could reject Coleman's automatism defense and conclude that Coleman intentionally shot and killed his wife-the only elements necessary to prove voluntary manslaughter. Accordingly, the trial court properly denied Coleman's motion.
 

 II. Cross-examination of Coleman's expert witness regarding fees
 

 Coleman next argues that the trial court committed plain error by allowing the State to question his expert witness, Dr. George Corvin, regarding the amount of fees Dr. Corvin received for testifying in other, unrelated criminal cases. Coleman argues that the question was not relevant and thus was inadmissible.
 

 As an initial matter, although Coleman asserts that this was plain error (the standard of review for unpreserved evidentiary challenges), Coleman's counsel timely objected to this line of questioning at trial by
 
 *502
 
 stating "objection, relevance." We therefore review it for ordinary prejudicial error, rather than the more onerous standard for plain error.
 

 This Court reviews a ruling on relevance de novo, but affords the trial court "great deference" on appeal.
 
 State v. Capers
 
 ,
 
 208 N.C.App. 605
 
 , 615,
 
 704 S.E.2d 39
 
 , 45 (2010). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401.
 

 Applying this definition, we hold that the challenged evidence was relevant to "test partiality towards the party by whom the expert was called."
 
 State v. Cummings
 
 ,
 
 352 N.C. 600
 
 , 620,
 
 536 S.E.2d 36
 
 , 51 (2000). From the large sums of money that Coleman's expert earned by testifying solely on behalf of criminal defendants, a reasonable jury could infer that the expert had an incentive to render opinions favorable to the criminal defendants who employ him. As our Supreme Court has observed, this inference readily can be addressed and rebutted on redirect, for example through the expert's testimony that his fees are consistent with those charged by others with similar levels of specialized knowledge and expertise.
 
 State v. Brown
 
 ,
 
 335 N.C. 477
 
 , 493,
 
 439 S.E.2d 589
 
 , 599 (1994). Moreover, in appropriate cases, a court might exclude this testimony because it is substantially more prejudicial than probative. But as to the threshold question of relevance, the fact that an expert witness may have a motive to testify favorably for the party calling him certainly is a "fact of consequence" to the jury's assessment of that witness's credibility. Thus, the challenged testimony was relevant and the trial court did not err in overruling Coleman's relevancy objection.
 

 III. Expert testimony concerning Coleman's state of mind
 

 Coleman next contends that the trial court committed plain error by allowing Dr. Burch, the State's expert witness, to testify to Coleman's state of mind at the time of the shooting. Coleman argues that this testimony fell outside the permissible range of Dr. Burch's expert testimony.
 

 Again, we note that although Coleman asserts plain error, his counsel timely objected to the challenged testimony, preserving this issue for appellate review. We therefore review it for prejudicial error, rather than the more onerous standard for plain error.
 

 "The trial court's decision regarding what expert testimony to admit will be reversed only for an abuse of discretion."
 
 State v. Alderson
 
 ,
 
 173 N.C.App. 344
 
 , 350,
 
 618 S.E.2d 844
 
 , 848 (2005). "Rule 702(a) has three main parts, and expert testimony must satisfy each to be admissible.
 

 *503
 
 First, the area of proposed testimony must be based on scientific, technical or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue."
 
 State v. McGrady
 
 ,
 
 368 N.C. 880
 
 , 889,
 
 787 S.E.2d 1
 
 , 8 (2016). "Second, the witness must be qualified as an expert by knowledge, skill, experience, training, or education."
 

 *825
 

 Id.
 
 at 889,
 
 787 S.E.2d at 9
 
 . "Third, the testimony must meet the three-pronged reliability test that is new to the amended rule: (1) The testimony [must be] based upon sufficient facts or data. (2) The testimony [must be] the product of reliable principles and methods. (3) The witness [must have] applied the principles and methods reliably to the facts of the case."
 
 Id.
 
 at 890,
 
 787 S.E.2d at 9
 
 .
 

 Here, Dr. Burch, an endocrinologist, testified that, based on his experience with hypoglycemia and his review of Coleman's medical records and accounts of what had occurred the day of the shooting, Coleman's actions were "not caused by automatism due to hypoglycemia. Automatism due to hypoglycemia is possible but not probable given the bulk of the evidence." Dr. Burch testified that he reached this opinion largely because Coleman did not experience any amnesia which, in Dr. Burch's experience, is one of the characteristic features of automatism caused by hypoglycemia.
 

 Coleman argues that this testimony, while couched as expert medical testimony, is merely speculation about Coleman's state of mind at the time of the shooting. We disagree. Dr. Burch is an endocrinologist whose expertise includes "automatism primarily as it relates to responsibility in driving motor vehicles and collisions by those suffering from hypoglycemia." The trial court properly found that Dr. Burch was an expert in the signs and symptoms that accompany automatism caused by hypoglycemia and that his testimony was based on sufficient data and facts using "well documented and accepted principles and methods in the field of endocrinology."
 

 Applying that expertise, Dr. Burch testified that, in his opinion, Coleman was not in a state of automatism when he shot his wife because he did not suffer from amnesia, a key characteristic of the condition. The trial court acted well within its sound discretion in admitting this expert testimony.
 
 See
 

 McGrady
 
 ,
 
 368 N.C. at 893
 
 ,
 
 787 S.E.2d at 11
 
 .
 

 IV. Jury instruction on defense of automatism
 

 Coleman next argues that the trial court committed plain error in its instructions to the jury on the defense of automatism.
 

 *504
 
 We agree that Coleman failed to preserve this error for appellate review and thus we review solely for plain error. "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial."
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012). "To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty."
 

 Id.
 

 Plain error should be "applied cautiously and only in the exceptional case" where the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."
 

 Id.
 

 Coleman contends that the jury instruction was misleading because it implied that Coleman had to prove the defense of automatism beyond a reasonable doubt. As explained below, we reject this argument.
 

 The trial court instructed the jury on the defense of automatism using the North Carolina Pattern Jury Instructions. The court instructed the jury:
 

 You may find there is evidence which tends to show that the defendant was physically unable to control his physical actions because of automatism or unconsciousness; that is a state of mind in which a person, though capable of action, is not conscious of what the person is doing at the time the crime was alleged to have been committed.
 

 In this case, one element that the State must prove beyond a reasonable doubt is that the act charged be done voluntarily. Therefore, unless you find from the evidence beyond a reasonable doubt that at the time the defendant was able to exercise conscious control of the defendant's physical actions, the defendant would be not guilty of the crime.
 

 If the defendant was unable to act voluntarily the defendant would not be guilty of any offense.
 

 The burden of persuasion rests on the defendant to establish this defense to the satisfaction of the jury. However, unlike
 
 *826
 
 the State, which must prove all the other elements beyond a reasonable doubt,
 
 the defendant need only prove the defendant's unconsciousness to your satisfaction. That is, the evidence taken as a whole must satisfy you, not beyond a reasonable doubt but simply to your satisfaction
 
 , that defendant was unconscious at the time of the alleged offense.
 

 *505
 
 (Emphasis added). The trial court then instructed the jury on each charge and explained that if the jury found "beyond a reasonable doubt" that Coleman met all the elements of the particular offense, "it would be your duty to return a verdict of guilty ... unless you are satisfied that the defendant was not guilty by reason of unconsciousness." And finally, the court concluded its instructions with, "If you do not so find or have a reasonable doubt as to one or more of these things, or if you are satisfied that the defendant was not guilty by reason of unconsciousness, it would be your duty to return a verdict of not guilty."
 

 These instructions accurately stated the law. As an initial matter, the instructions are almost entirely a verbatim recitation of the pattern jury instructions, which this Court has held is the preferred manner of instructing the jury on all issues.
 
 Henry v. Knudsen
 
 ,
 
 203 N.C.App. 510
 
 , 519,
 
 692 S.E.2d 878
 
 , 884 (2010). Moreover, even where these instructions depart from the pattern instructions, they accurately state the law. The instructions explained the proper burden of proof for the defense of automatism as well as the principle that if the jury found that Coleman had met his burden of proving the defense then he would not be guilty of any crime. The instructions explicitly stated that Coleman's burden was "to establish this defense to the satisfaction of the jury" and that "unlike the State, which must prove all the other elements beyond a reasonable doubt,
 
 the defendant need only prove the defendant's unconsciousness to your satisfaction
 
 ." (Emphasis added). The instructions also explicitly stated that "[i]f the defendant was unable to act voluntarily
 
 the defendant would not be guilty of any offense
 
 ." (Emphasis added). Finally, the instructions on each of the charged offenses indicated that a finding of unconsciousness or automatism would require a verdict of not guilty.
 

 Accordingly, we hold that the trial court's jury instructions on automatism, considered in context, were a correct statement of the law. We therefore find no error and certainly no plain error.
 

 V. Omission of involuntary manslaughter from jury charge
 

 Finally, Coleman argues that the trial court committed plain error by not instructing the jury on the lesser-included offense of involuntary manslaughter. This argument is not preserved for appellate review and thus is subject to the plain error standard described above.
 

 "An instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the greater."
 
 State v. Millsaps
 
 ,
 
 356 N.C. 556
 
 , 561,
 
 572 S.E.2d 767
 
 , 771 (2002). In the context of a shooting, the charge of involuntary manslaughter requires evidence of "the
 
 *506
 
 absence of intent to discharge the weapon."
 
 State v. Robbins
 
 ,
 
 309 N.C. 771
 
 , 779,
 
 309 S.E.2d 188
 
 , 192 (1983). This distinguishes involuntary manslaughter from its voluntary counterpart, which requires proof of intent.
 

 Coleman's argument fails because there was no evidence at trial suggesting that Coleman did not intend to shoot his wife. Coleman's defense relied on his argument that he was in a state of automatism-a complete defense to all criminal charges. The jury rejected that defense. Setting automatism aside, there is no evidence suggesting the shooting was an accident. Accordingly, we find no error in the trial court's failure to instruct the jury on the lesser-included offense of involuntary manslaughter.
 

 Conclusion
 

 For the reasons discussed above, we find no error in the trial court's judgment.
 

 NO ERROR.
 

 Chief Judge McGEE and Judge MURPHY concur.